Matter of City of Ogdensburg (Ogdensburg Firefighters Assn. Local 1799, A.F.L., C.I.O., I.A.F.F) (2022 NY Slip Op 00237)





Matter of City of Ogdensburg (Ogdensburg Firefighters Assn. Local 1799, A.F.L., C.I.O., I.A.F.F)


2022 NY Slip Op 00237


Decided on January 13, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 13, 2022

533115
[*1]In the Matter of the Arbitration Between The City of Ogdensburg, Respondent, and Ogdensburg Firefighters Association Local 1799, A.F.L., C.I.O., I.A.F.F, Appellant.

Calendar Date:November 17, 2021

Before:Egan Jr., J.P., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Blitman & King LLP, Syracuse (Nathaniel G. Lambright of counsel), for appellant.
Coughlin & Gerhart, LLP, Binghamton (Paul J. Sweeney of counsel), for respondent.



Colangelo, J.
Appeal from an order of the Supreme Court (Farley, J.), entered March 26, 2021 in St. Lawrence County, which granted petitioner's application pursuant to CPLR 7503 to permanently stay arbitration between the parties.
Petitioner and respondent entered into a collective bargaining agreement (hereinafter CBA) for a term beginning January 1, 2020 through December 31, 2025. Among other things, the CBA provides for grievance-arbitration procedures and, as relevant here, contains certain minimum staffing regimens. Specifically, article 18 (d) of the CBA states that "[t]here shall be [four] shifts of bargaining unit employees and each shift must have an officer structure of one Assistant Chief, one Captain, with the remaining shift members being Firefighters." Further, article 18 (e) of the CBA provides that "[a] minimum of [five] bargaining unit employees ([four] firefighters plus [one] officer, or [three] firefighters plus [two] officers) shall be on-duty at all times unless otherwise mutually agreed to in writing for the period of this contract."[FN1] No written agreement to alter these staffing rules was ever reached.
In December 2020, petitioner's acting fire chief, unilaterally, informed respondent of its intention, beginning in 2021, to operate its fire department with less than five on-duty members, possibly as few as three firefighters, on each shift. Respondent initiated a grievance pursuant to the grievance procedure set forth in article 22 of the CBA alleging that petitioner violated the entire CBA, including article 18 (d) and (e). Respondent's grievance was eventually denied and, thereafter, respondent filed a demand for arbitration. In response, petitioner commenced this proceeding under CPLR article 75 seeking to permanently stay arbitration. Supreme Court granted petitioner's application, finding that the grievance concerned a job security clause that is nonarbitrable as against public policy. Respondent appeals, and we reverse.
"The court's role in reviewing applications to stay arbitration is a limited one" (Matter of City of Troy [Troy Uniformed Firefighters Assn., Local 86, IAFF, AFL-CIO], 195 AD3d 1189, 1190 [2021] [internal quotation marks and citations omitted]). The threshold determination is whether the subject matter of the grievance is arbitrable, which involves a two-part inquiry into whether "there is any statutory, constitutional or public policy prohibition against arbitration of the grievance. If no prohibition exists, we then ask whether the parties in fact agreed to arbitrate the particular dispute by examining their [CBA]" (id. [internal quotation marks and citations omitted]; see Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.], 93 NY2d 132, 137-140 [1999]). When deciding whether to stay or compel arbitration under CPLR 7503, courts are "concerned only with the threshold determination of arbitrability, and not with the merits of the underlying claim" (Matter of City of Troy [*2][Troy Police Benevolent & Protective Assn., Inc.], 191 AD3d 1203, 1204 [2021] [internal quotation marks and citations omitted]). "Judicial restraint under the public policy exception is particularly appropriate in arbitrations pursuant to public employment [CBAs]" (id. [internal quotation marks and citations omitted]).
Respondent contends that Supreme Court erred in concluding that its grievance concerned nonarbitrable job security clauses as the clauses relate only to minimum shift staffing requirements and do not guarantee employment to bargaining unit members during the life of the CBA, a hallmark of a no-layoff job security clause. Respondent further asserts that minimum staffing requirements set forth in article 18 (d) and (e) of the CBA pertain to health and safety concerns and are properly the subject of arbitration.
We find our decision in Matter of Village of Endicott [Village of Endicott Police Benevolent Assn., Inc.] (182 AD3d 738 [2020]) to be dispositive in reaching our conclusion that the CBA provisions at issue are not job security provisions. In that case, the petitioner sought to impose a prohibition against the use of overtime for police officers to staff a fourth officer on, among other things, a short shift of only three police officers, resulting in a reduction in the per shift staffing level from four to three police officers during certain shifts. As we held therein, and as is directly analogous to the instant clauses of the parties' CBA, the plain language of provisions of this nature "merely provide[] for minimum staffing on particular shifts[,]" and are "more akin to a condition of employment, such as the safety of officers, than to a job security provision" (id. at 741), even though the clauses here make no express mention of safety. As we held in Village of Endicott, and as is directly relevant here, the CBA "does not purport to guarantee a[n] [officer] his or her employment while the CBA is in effect, nor does it prohibit layoffs" (id. [internal quotation marks and citations omitted]). "It also does not protect officers 'from abolition of their positions due to budget stringencies'" (id., quoting Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers, 40 NY2d 268, 275 [1976]; see Matter of City of Lockport [Lockport Professional Firefighters Assn., Inc.], 141 AD3d 1085, 1087-1088 [2016]). Rather, as noted above, the CBA only sets forth "minimum staffing on particular shifts" (Matter of Village of Endicott [Village of Endicott Police Benevolent Assn., Inc.], 182 AD3d at 741; see Matter of City of Watertown [Watertown Professional Firefighters Assn., Local 191], 169 AD3d 1396, 1397 [2019], lv denied 33 NY3d 904 [2019]; Matter of City of Lockport [Lockport Professional Firefighters Assn., Inc.], 141 AD3d at 1088).
Although the provisions at issue here do not expressly mention safety as a reason for the minimum staffing requirements, the safety considerations are self-evident from the [*3]nature of the work to be performed — the quintessentially dangerous task of addressing conflagrations that, from time to time, beset the community. It goes without saying that, in such situations, having adequate personnel on hand would be essential to ensure firefighter safety as well as success in fighting the fires. In addition, the parties plainly agreed to arbitrate matters such as this as article 22 of the CBA clearly contemplates arbitration of grievances. Supreme Court therefore erred in staying arbitration here. In view of our decision, respondent's remaining contentions are academic.
Egan Jr., J.P., Clark, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, and motion denied.



Footnotes

Footnote 1: Significantly, article 18 (d) and (e) of the CBA do not, by their terms, prohibit layoffs, guarantee a firefighter's employment or prevent the abolition of a firefighter's position.